**UNITED STATES DISTRICT COURT**

**WESTERN DISTRICT OF LOUISIANA**

**ALEXANDRIA DIVISION**

| | |
|---|---|
| **BEKA MAKHATADZE** | **CIVIL ACTION NO. 1:26-1754** |
| | **SECTION P** |
| **VS.** | **JUDGE TERRY A. DOUGHTY** |
| **WARDEN WINN CORRECTIONAL CENTER, ET AL.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

**REPORT AND RECOMMENDATION**

Petitioner Beka Makhatadze,[1] a detainee in the custody of the Department of Homeland Security ("DHS") and the Bureau of Immigration and Customs Enforcement ("ICE"), petitions for a writ of habeas corpus under 28 U.S.C. § 2241.[2] Respondents oppose the petition. [doc. # 19]. For reasons below, the Court should grant this petition.

**Background**

Petitioner is a citizen of Georgia. He entered the United States of America on May 24, 2024. [doc. # 1-2, p. 1]. He was taken into immigration custody the same day. [doc. # 1, p. 5].

On March 5, 2025, an immigration judge ordered Petitioner removed but granted withholding of removal to Georgia. [doc. #s 1, p. 2; 1-2, pp. 22-24].

---

[1] Petitioner's "A Number" is 226-062-331.

[2] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

On December 1, 2025, the Board of Immigration Appeals dismissed the Government's appeal. [doc. # 1-2, pp. 26-29].

On March 27, 2026, Petitioner asked ICE for information concerning "which third country ICE found for" him. [doc. # 1-2, p. 40]. An official responded, "At this time a third country is still pending." *Id.*

On April 20, 2026, Petitioner submitted a 'Detainee and ICE Communications Form,' asking ICE which third country it found for him. [doc. # 1-2, p. 38]. An official responded, "We do not have information about those third countries." *Id.*

On May 4, 2026, Moldova refused to allow Petitioner to enter. [doc. # 1-2, p. 42].

Petitioner filed this proceeding on approximately May 26, 2026. [doc. # 1]. He claims that his "continued detention is indefinite and unlawful because there is no significant likelihood that [he] will be removed in the reasonably foreseeable future." *Id.* at 6. The Government tried to remove him to Moldova, but Moldova did not accept him. [doc. # 1, pp. 2, 7]. He maintains that the experience "was extremely traumatic and has left [him] emotionally devastated and fearful for [his] safety and future." [doc. # 1-1, p. 1]. He also maintains that he has cooperated with DHS and intends to "fully comply with all future immigration proceedings and requirements." *Id.*

Respondents opposed the petition on July 29, 2026. [doc. # 19].

## Law and Analysis

Under 8 U.S.C. § 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." Under Section 1231(a)(6), "An alien ordered removed who is inadmissible[,] . . . removable[,] . . . or who has been determined by the Attorney General to

be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." In *Zadvydas*, 533 U.S. at 682, the Supreme Court construed Section 1231(a)(6) "to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review."

"[T]he Court construed § 1231(a)(6) to mean that an alien who has been ordered removed may not be detained beyond 'a period reasonably necessary to secure removal,' 533 U.S., at 699, 121 S.Ct. 2491 and it further held that six months is a presumptively reasonable period, *id.,* at 701, 121 S.Ct. 2491. After that, the Court concluded, if the alien 'provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,' the Government must either rebut that showing [with evidence] or release the alien." *Jennings v. Rodriguez*, 138 S. Ct. 830, 843 (2018) (quoting *Zadvydas*, 533 U.S. at 699).[3] If removal is not reasonably foreseeable, "the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions." *Id.* at 700.

"[R]eview must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to 'speak with one voice' in immigration matters." *Id.* at 700.

[3] "The alien bears the initial burden of proof in showing that no such likelihood of removal exists." *Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006).

Here, Petitioner has been in custody beyond the presumptively reasonable six-month period. To date, he has been detained 260 days (or 8 months, 17 days) following his final order of removal.

In addition, Petitioner meets his initial burden of providing good reason to believe that there is no significant likelihood of his removal in the reasonably foreseeable future. For over eight months, the Government has been unable to obtain a travel document for him. Moreover, the Government tried to remove Petitioner to Moldova, but Moldova did not accept him. Petitioner also maintains that he has cooperated with DHS and intends to "fully comply with all future immigration proceedings and requirements." *Id.*

Respondents attach the declaration of Acting Assistant Field Office Director Justin Williams, who declares in part:

> 10) On December 8, 2025, ERO reached out to ERO Removal Division at Headquarters (ERO-HQ) for guidance on third country removal.
>
> 11) On January 7, 2026, the Petitioner was served with Notice to Alien of Custody Review, Warning for Failure to Depart (Form I-229(a)), and Instruction Sheet Regarding Requirement to Assist in Removal.
>
> 12) On February 26, 2026, a 90-day post order custody review was completed.
>
> 13) On March 5, 2026, the Petitioner was served with a Decision to Continue Detention based on his immigration history and flight risk.
>
> 14) On March 4, 2026, ERO-HQ informed ERO that the Petitioner was pending third country removal.
>
> 15) On April 7, 2026, ERO requested an update from ERO-HQ on third country removal.
>
> 16) On April 20, 2026, ERO-HQ informed ERO that the Petitioner had been accepted for removal to Moldova, scheduled for removal on April 28, 2026.
>
> 17) On April 25, 2026, ERO transferred the Petitioner to a staging facility in El Paso, Texas to be staged for removal to Moldova.

> 18) On May 3, 2026, ERO received confirmation that the Petitioner's scheduled flight was rejected by the Government of Moldova.
>
> 19) On June 1, 2026, the Petitioner was served with Notice to Alien of Interview for Review of Custody Status. The Petitioner refused to sign the document.
>
> 20) On July 1, 2026, ERO requested update from ERO-HQ on third country removal.
>
> 21) On July 15, 2026, ERO requested update from ERO-HQ on the 180-day post order custody.
>
> 22) ERO continues to coordinate with ERO-HQ to identify a third country for removal of the Petitioner.

[doc. # 19-4].

That Respondents have not obtained a travel document following the actions above suggests that a travel document is not *significantly likely* to be forthcoming in the reasonably foreseeable future. Respondents essentially present only internal agency exchanges of communications for over four months, followed by a failed attempt to remove Petitioner to Moldova over three months ago, followed by over three months of ostensibly unanswered ERO requests for updates.[4]

Respondents have not even identified a third country for Petitioner's removal, much less made any efforts at securing a travel document for a specific country. From the record, it appears that they have not even started the process of attempting to remove Petitioner to a specific third country. And they do not state how long the process will take after identifying a third country. Yet, they still detain him.[5]

[4] The longer a request remains pending without any action, "what counts as the 'reasonably foreseeable future' conversely would have to shrink." *See Zadvydas*, 533 U.S. at 701.

[5] While not dispositive, the undersigned notes that the Government has detained Petitioner in total for approximately 2 years, 2 months, and 25 days.

Respondents provide no evidence—or reasons to conclude—that a travel document is forthcoming.[6] They do not, for example, provide any evidence that they have made progress in obtaining travel documents, that they have been communicating with any country about Petitioner's deportation (apart from Moldova), that any country has recently accepted others similarly situated to Petitioner, that any country has an agreement or treaty with the United States affecting Petitioner's removal, or that any country is willing to accept Petitioner.[7, 8]

---

[6] *See Gabremicheal v. Gonzales*, 2007 WL 624602, at *3 (W.D. La. Jan. 31, 2007) ("There is simply no indication that any effort is being made to obtain a travel document for Gabremicheal or that a travel document is likely to issue in the reasonably foreseeable future."); *Azad v. Interim Dist. Director, New York,* 2009 WL 2569132 (S.D.N.Y., August 19, 2009) (finding that ICE failed to rebut a showing by petitioner where ICE's contacts with the local Consulate of Bangladesh resulted only in statements that the consulate was awaiting confirmation of information); *Mohamed v. Ashcroft,* 2002 WL 32620339 (W.D. Wash., April 15, 2002) (granting petitioner habeas corpus relief where the government failed to offer any "specific information regarding how or when [it] expect[ed] to obtain the necessary documentation or cooperation from the Ethiopian government."); *Islam v. Kane*, 2011 WL 4374226, at *1 (D. Ariz. Aug. 30, 2011), *report and recommendation adopted,* 2011 WL 4374205 (D. Ariz. Sept. 20, 2011) ("Other than stating that the travel document request is 'pending,' Respondent provides no details about the status of Petitioner's travel document, such as whether DHS has received any assurances that travel documents are forthcoming, or whether the Bangladesh Consulate is even willing to issue a travel document for Petitioner."); *Shefqet v. Ashcroft*, 2003 WL 1964290, at *5 (N.D. Ill. Apr. 28, 2003) (finding that the government failed to meet its burden in part because there was no evidence that Guyana had responded to the request for travel documents); *Butt v. Holder*, 2009 WL 1035354, at *5 (S.D. Ala. March 19, 2009) (holding that the petitioner met his initial burden when he was held in ICE custody for more than ten months after the issuance of his removal order with no indication from the Pakistani Embassy that travel documents would be issued); *Palma v. Gillis,* 2020 WL 4880158, at *2 (S.D. Miss. July 7, 2020).

[7] The undersigned lists these non-exhaustive examples for general illustrative purposes only.

[8] *See generally Shengelia v. Ortega*, 2025 WL 3654368, at *3 (W.D. Tex. Dec. 16, 2025) ("The Government has undertaken third-country inquiries for months now and has produced no acceptances, travel documents, timelines, or scheduled removal. While it has received refusals from France and Uganda, inquiries to Canada, Armenia, Azerbaijan, and Turkey remain pending without response. . . . Even when ICE has 'identified a third country,' noncitizens like Petitioner 'would be entitled to seek fear-based relief from removal to that country, which would require additional, lengthy proceedings.'") (quoting *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 399 (D.N.J. 2025)).

Respondents cannot rest on bald assertions that removal is foreseeable without providing sufficient supporting evidence. "A theoretical possibility of eventually being removed does not satisfy the Government's burden once the removal period has expired and the petitioner establishes good reason to believe [that] his removal is not significantly likely in the reasonably foreseeable future." *Kane v. Mukasey*, 2008 WL 1139137 at *5 (S.D. Tex. 2008).

As one Court stated, "if [ICE] has no idea of when it might reasonably expect [Petitioner] to be repatriated, this Court certainly cannot conclude that his removal is likely to occur—or even that it might occur—in the reasonably foreseeable future." *Singh v. Whitaker*, 362 F. Supp. 3d 93, 102 (W.D.N.Y. 2019). Petitioner need not show that removal is impossible. *Zadvydas*, 533, U.S. at 702. Although there may be some possibility that Petitioner could be removed, an unsubstantiated possibility does not satisfy Respondents' burden.

Accordingly, Petitioner's detention is unreasonable; the Court should grant habeas corpus.[9]

## <u>Conclusion</u>

For the reasons above, **IT IS RECOMMENDED** that Petitioner Beka Makhatadze's petition for habeas corpus be **GRANTED**: Respondents, and the Warden of Central Louisiana ICE Processing Center, shall (A) immediately release Petitioner from custody without bond, under reasonable conditions of supervision if necessary and (B) notify Petitioner's counsel of the exact location and time of his release no less than two hours before his release.

**IT IS FURTHER RECOMMENDED** that Respondents shall, within **24 hours** after Petitioner's release, file a status report confirming his release.

---

[9] The undersigned finds no need to address any claim or request for relief not addressed herein.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 17th day of August, 2026.

Kayla Dye McClusky
United States Magistrate Judge